**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

SALAH E. KHELFAOUI,

         Plaintiff,

            v.

THE LOWELL SCHOOL
COMMITTEE, AND MAYOR
WILLIAM SAMARAS,
INDIVIDUALLY,

         Defendants.

No. 19-cv-11861-DLC

**MEMORANDUM AND ORDER RE:**
**DEFENDANTS' PARTIAL MOTION TO DISMISS**

CABELL, U.S.M.J.

**I.    INTRODUCTION**

      Plaintiff Salah Khelfaoui served as superintendent of the
Lowell Public Schools ("LPS") from July 2015 to July 2018, when
the defendant Lowell School Committee ("LSC") terminated his
contract. He asserts in a second amended complaint ("complaint")
several claims arising from the termination, including claims
against the LSC for breach of contract (Count I), breach of the
covenant of good faith and fair dealing (Count II), and deprivation
of due process (Count IV). He also asserts a claim against Lowell
Mayor William Samaras for intentional misrepresentation (Count
III). (D. 25). The defendants move to dismiss Counts II, III and
IV. (D. 29). The parties have consented to this court's

jurisdiction.  *See* 28 U.S.C. § 636.  For the reasons explained below, Count II will be dismissed but Counts III and IV may go forward.

## II.  BACKGROUND

The facts as alleged in the complaint are taken as true for purposes of the partial motion to dismiss.  (D. 25).

In July 2015, the LSC voted to hire the plaintiff as superintendent of the LPS.  In May 2017, the plaintiff signed a contract with the LPS with an ending date of June 30, 2020.  (Id. at ¶¶ 8-9).  The contract provided that the LSC could terminate the plaintiff's employment for "good cause," which it defined as:

> any ground that is put forth by the School COMMITTEE in good faith that is not arbitrary or irrelevant to the task of maintaining an efficient school system, and may include but is not limited to, inefficiency, incompetence, insubordination, physical or mental incapacity, . . . . and misconduct that detracts from the position of SUPERINTENDENT as a community leader.

(Id. at ¶ 11).

As Lowell is the fourth largest city in the Commonwealth, the plaintiff as superintendent had significant responsibilities for 14,500 students, 2,000 adult education students, and 2,000 employees, including 1,000 teachers.  (Id. at ¶¶ 12-19).

The LSC consists of six elected members, all elected every two years.  (Id. at ¶ 47).  The mayor also serves on the LSC and

votes in cases of ties. (Id. at ¶¶ 3, 116). When he began serving as superintendent, the plaintiff could count on support for his initiatives from five LSC members. And even after four new members were elected for the 2016 term, he had support from a majority of the members and Lowell's then-mayor, Edward Kennedy. (Id. at ¶¶ 49, 53).

For the 2018 term, however, one of the plaintiff's supporters on the LSC was replaced by a new member who had been an outspoken critic of the superintendent. (Id. at ¶ 81). Additionally, defendant William Samaras ("Samaras") replaced Edward Kennedy as mayor. (Id. at ¶ 82). Under this new LSC, the plaintiff "faced opposition" from three members and was supported by the other three members, requiring Samaras to often be "the tie-breaker." (Id.)

Although the plaintiff had clashed with various members of the LSC throughout his tenure, things came to a head after the 2018 LSC was elected, when a bussing contract that had been awarded by the 2016 LSC was challenged by a competitor bussing company. (Id. at ¶ 97). The plaintiff, believing the contract had been properly awarded, ordered a compliance audit from the Inspector General. (Id. at ¶¶ 112-113). When the plaintiff informed the 2018 LSC of the audit, Mayor Samaras and the three opposing LSC members reacted with anger and accused the plaintiff of insubordination. (Id. at ¶ 114).

3

Perceiving after this dispute that he no longer would have the support of a majority of the LSC or the mayor to approve his initiatives, the plaintiff began looking for new employment in the spring of 2018.  (Id. at ¶ 116).  He became a finalist for superintendent of the Randolph schools, and his final interview was scheduled for July 12, 2018.  (Id. at ¶¶ 120-121).

When news of the plaintiff's job search became public, the general counsel for the LPS met with the mayor, who indicated that he did not want the plaintiff to leave.  (Id. at ¶¶ 117-118).  When the plaintiff informed Mayor Samaras of his pending interview with Randolph, the mayor asked to have lunch with him on July 9, 2018. (Id. at ¶¶ 121-122, 246-247).

At the lunch, the mayor "implored" the plaintiff to remain as superintendent and "pledged his support" with respect to the three opposing LSC members.  (Id. at ¶¶ 123-124, 248).  The mayor told the plaintiff that he was "confident that we can tackle the few challenges we still have better with you than without you," and the plaintiff responded that he was "grateful for [the mayor's] vote of confidence . . ."  (Id. at ¶¶ 125-126).  The plaintiff subsequently received telephone calls that evening from three prominent Lowell citizens, each of whom told him that Mayor Samaras had said the lunch meeting was positive, and that they were happy

4

that the mayor had pledged to support the plaintiff. (Id. at ¶¶ 128-129).

On Wednesday, July 11, 2018, the plaintiff withdrew his candidacy for the Randolph position and issued a press release stating he would remain with the LPS to complete his contract. (Id. at ¶¶ 131-132, 253). On this same day, Mayor Samaras declared at a public city council meeting that "the Superintendent is not going anywhere!" (Id. at ¶ 132).

However, on July 13, 2018, two members of the LSC submitted three motions to terminate the plaintiff for cause, to put him on paid administrative leave, and to appoint the deputy superintendent to be acting superintendent. (Id. at ¶ 133). The LSC met on July 18, 2018 to vote on these motions. Mayor Samaras asked to amend the motion to terminate to provide that termination for cause would be drafted only after a comprehensive and independent audit was performed to establish good cause for termination. (Id. at ¶¶ 134-135). The LSC, with Mayor Samaras' vote, passed the motion to terminate, as amended, as well as the motion to place the plaintiff on leave. (Id. at ¶¶ 136-137). The plaintiff claims that the four LSC members who voted to terminate him had decided to do so prior to the July 18 meeting. (Id. at ¶¶ 142, 257).

Following the plaintiff's suspension, the LPS commissioned a forensic audit to look for any fraud or noncompliance in the LPS's financial transactions. (Id. at ¶ 138). On August 24, 2018, the LSC sent the plaintiff a Notice of Contemplated Termination alleging "good cause," claiming that he had unacceptably managed accounts, budgets, and contracts; been insubordinate toward the LSC; failed to respond to reports of safety violations; improperly managed personnel; failed to timely respond to LSC motions; and failed to follow sound business practices for the bussing contract. (Id. at ¶¶ 139, 140).

The plaintiff's termination hearing was on November 14, 2018, before the forensic audit had been completed, so the plaintiff did not receive a copy of it before his hearing. (Id. at ¶¶ 143, 145-146, 257). The LSC also did not provide the plaintiff with a formal Notice of Termination prior to his termination, pursuant to Article 5 of his employment contract. (Id. at ¶¶ 152, 257). Further, the plaintiff was prevented while on administrative leave from contacting the LPS or any City of Lowell employees, which impaired his preparation of a defense for his termination hearing. (Id. at ¶¶ 153, 257).

III. **ANALYSIS**

A. Standard of Review

The defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss Counts II, III and IV.  A Rule 12(b)(6) motion to dismiss challenges a party's complaint for failing to state claim.  In deciding such a motion, a court must "accept as true all well-pleaded facts set forth in the complaint and draw all reasonable inferences therefrom in the pleader's favor." *Haley v. City of Boston*, 657 F.3d 39, 46 (1st Cir. 2011) (quoting *Artuso v. Vertex Pharm., Inc.*, 637 F.3d 1, 5 (1st Cir. 2011)).

To survive such a motion, the plaintiff must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  The "obligation to provide the grounds of [the plaintiff's] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 555 (quotation marks and alteration omitted). The "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555 (internal citations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550
U.S. at 556).  However, the court is "not bound to accept as true
a legal conclusion couched as a factual allegation."  *Iqbal*, 556
U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Simply put, the
court should assume that well-pleaded facts are genuine and then
determine whether such facts state a plausible claim for relief.
*Iqbal*, 556 U.S. at 679.

   B. Count II:  Breach of the Implied Covenant of Good Faith
      and Fair Dealing

   The plaintiff has assented to dismissal of Count II.
Accordingly, the motion to dismiss Count II is allowed.

   C. Count III:  Intentional Misrepresentation

   Count III asserts a claim of intentional misrepresentation
against Mayor Samaras.   To state a claim for intentional
misrepresentation under Massachusetts law, a plaintiff must allege
that: "(1) the defendant made a false representation of material
fact; (2) the  defendant knew the representation  was  false; (3)
the purpose of the representation was to induce the plaintiff to
act on the false representation; and (4) the plaintiff relied on
the representation to his or her detriment."  *4 MVR, LLC v. Warren
W. Hill Const. Co.*, No. 12-10674-DJC, 2013 WL 310290, at *4 (D.
Mass. Jan. 25, 2013).  *See also Taylor v. Am. Chemistry Council*,
576 F.3d 16, 31 (1st Cir. 2009).  A claim for misrepresentation

must be pled with particularity. *See* Fed. R. Civ. P. 9(b). Under this rule, "a claim based on [misrepresentation] must state with particularity what the underlying misrepresentation was, who made it, and when and where it was made." *Robinson v. Spencer Stuart, Inc.*, No. 13-10278-RWZ, 2013 WL 3989672, at *9 (D. Mass. Aug. 5, 2013). *See Alt. Sys. Concepts v. Synopsys, Inc.*, 374 F.3d 23, 29 (1st Cir. 2004). "The purpose of Rule 9(b)'s requirement that plaintiffs plead fraud claims with particularity is '(1) to give the defendants notice and enable them to prepare meaningful responses; (2) to preclude the use of a groundless fraud claim as a pretext to using discovery as a fishing expedition; and (3) to safeguard defendants from frivolous charges that might damage their reputations.'" *4 MVR, LLC*, 2013 WL 310290, at *4 (quoting *Laverty v. Massad*, No. 08-40126-FDS, 2009 WL 1873646, at *4 (D. Mass. Mar. 10, 2009)).

In addition to the particularity requirement, the misrepresentation must be of a material fact. A representation is "material" when "a reasonable man would attach importance (to the fact not disclosed) in determining his choice of action in the transaction in question." *Rogen v. Ilikon Corp.*, 361 F.2d 260, 266 (1st Cir. 1966) (noting that if a trier of fact could rationally find for plaintiff, then plaintiff should have their day in court), citing Restatement, Torts § 538 (2)(a). A material

fact may include a promise of a future act based on the speaker's present intent at the time the statements were made. *Grant v. Target Corp.*, 126 F. Supp.3d 183, 191 (D. Mass. 2015); *Bolen v. Paragon Plastics, Inc.*, 754 F. Supp. 221, 226 (D. Mass. 1990). Present intent concerning a future act is a fact that is susceptible of proof. *Barrett Associates, Inc. v. Aronson*, 346 Mass. 150, 152 (1963); *Bolen*, 754 F. Supp. at 226. As long as the statement is based on the speaker's knowledge, actual intent to deceive on the part of the speaker need not be shown. *Russell v. Cooley Dickinson Hosp., Inc.*, 437 Mass. 443, 458-59 (2002).

Reasonable reliance requires evaluating whether the alleged representations were sufficiently specific that it would be reasonable to rely on them. *Bolen*, 754 F. Supp. at 226. Statements that are vague and general, or at odds with other information would not justify reliance. *Treadwell*, 666 F. Supp. at 286. The determination of whether reliance is reasonable is ordinarily a question of fact for a jury. *Grant v. John Hancock Mut. Life Ins. Co.*, 183 F.Supp.2d. 344, 370 (D. Mass. 2002).

The complaint alleges that the mayor, aware that the plaintiff had a pending interview with another school system, met with him for lunch on July 9, 2018, "implored" him to remain as superintendent, and pledged to "support" the plaintiff despite opposition from members of the LSC. (D. 25 at ¶¶ 123-124, 248).

The mayor contends that Count III fails to state a valid claim because, even assuming he made such statements:  (1) the statements were merely "broad statements about future conditions" rather than material fact; and (2) were regardless too vague and indefinite to warrant reasonable reliance upon them.  The court does not agree.

The claim satisfies Rule 9(b)'s particularity requirement where it identifies the time, place, and contents of the misrepresentations.  With respect to substance, the court agrees that the statements in and of themselves are not exceptionally declarative or definite.  However, a factfinder could reasonably infer from the context in which the statements were made that the mayor understood that the plaintiff intended to interview for another position in light of the opposition he faced from the LSC, and represented that he would support the plaintiff to overcome any opposition, in order to induce the plaintiff to stay in his position as superintendent rather than interview for the available position in Randolph.  The plaintiff's reported response that he was "grateful" for the mayor's "vote of confidence" and would therefore give "serious thought" to remaining in his position, and that he was subsequently contacted by "prominent citizens" expressing their happiness that he was staying in Lowell, are sufficient for pleading purposes to show that the mayor's

statements were both material and definite enough to be reasonably relied upon.  The motion to dismiss Count III is therefore denied.

C. <u>Count IV:  Deprivation of Due Process</u>

Count IV alleges that the LSC deprived the plaintiff of his Fourteenth Amendment right to due process.  The complaint purports to enumerate eight separate instances of deprivation but, broadly speaking, alleges that the defendants (i) failed to give the plaintiff proper notice before commencing termination proceedings; (ii) conducted sham proceedings because four LSC members had decided to terminate him prior to their July 18, 2018 hearing; (iii) conducted the termination proceedings before receiving the results of a comprehensive audit; and (iv) prevented the plaintiff from collecting information to prepare for the termination proceedings.[1]

Section 1983 of the Civil Rights Act of 1866 '"supplies a private right of action against a person who, under color of state law, deprives another of rights secured by the Constitution or by

---

[1] The complaint alleges that the LSC deprived the plaintiff of his right to due process when it:  (1) formed a consensus opinion and decided to terminate [him] before convening school committee meetings; (2) engaged in sham proceedings; (3) proceeded to perform a comprehensive audit prior to issuing a formal "Notice of Termination"; (4) failed to issue a "Notice of Termination" prior to the actual November 14, 2018 termination hearing; (5) issued only a "Notice of Contemplated Termination"; (6) conducted the termination hearing before the completion of the comprehensive audit; (7) failed to provide the plaintiff with a copy of the audit; and (8) prevented the plaintiff from speaking with LPS personnel to prepare for his termination proceeding.  (D. 25, ¶ 257).

12

federal law.'" *Mead v. Indep. Ass'n.*, 684 F.3d 226, 231 (1st Cir. 2012) (quoting *Santiago v. Puerto Rico*, 655 F.3d 61, 68 (1st Cir. 2011)); *accord Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013).   Section 1983 '"is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.'" *Davis v. Rennie*, 264 F.3d 86, 97 (1st Cir. 2001) (quoting *Graham v. Connor*, 490 U.S. 386, 393-94 (1989)).

To make out a procedural due process claim, a section 1983 plaintiff must show that he was deprived of a protected property interest and that the deprivation of the property interest was accomplished without due process of law. *Perez-Acevedo v. Rivero-Cubano*, 520 F.3d 26, 30 (1st Cir. 2008); *see also Harron v. Town of Franklin*, 660 F.3d 531, 537 (1st Cir. 2011).   "Due process of law" in this context requires that "individuals whose property interests are at stake are entitled to notice and an opportunity to be heard." *Mimiya Hosp., Inc. SNF v. U.S. Dep't of Health & Human Servs.*, 331 F.3d 178, 181 (1st Cir. 2003) (quoting *Dusenbery v. United States*, 534 U.S. 161, 167 (2002)).   "Before a career employee is discharged, he is 'entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story.'" *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 134 (1st Cir. 2005) (quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546

(1985)).  The requisite procedures of notice and an opportunity to respond "need not be elaborate." *Whalen v. Massachusetts Trial Court*, 397 F.3d 19, 26 (1st Cir. 2005) (quoting *Loudermill*, 470 U.S. at 546).  "To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee." *Loudermill*, 470 U.S. at 546.

The defendants concede that the plaintiff possessed a property interest in his employment by virtue of his employment agreement, but argue that he cannot show a due process violation because, consistent with both his contract and with federal law, the defendants provided him with adequate notice of his contemplated termination, the underlying reasons for seeking his termination, and a fulsome hearing.  The defendants' argument is not facially unreasonable but the record is too undeveloped at this early juncture to fully assess the merits of all aspects of the due process claim.

Among other things, the plaintiff contends that the notice he received prior to his November 14, 2018 hearing was contractually inadequate.  He contends further that the defendants decided to terminate him before the July 18, 2018 LSC hearing where the vote to terminate was conducted, and proceeded with a November 14 pre-termination hearing without first awaiting the results of an

independent forensic audit.  The plaintiff contends that the LSC's actions contravened the spirit of their motion to perform an independent audit to find "good cause" before drafting a termination for cause, deprived him of knowing what specific evidence supported the LSC's finding of "good cause", and also prevented him from relying upon the results to potentially rebut the LSC's allegations.  The plaintiff contends further that the defendants prevented him from speaking with pertinent staff and personnel he needed to speak with to prepare a defense.  As such, the plaintiff argues that the termination hearing was meaningless because he did not have an "opportunity to present his side of the story."  *See Loudermill*, 470 U.S. at 546.

An evaluation of the merits of this claim should await the benefit of a more complete record.  Dismissal is therefore not appropriate.

### IV.  CONCLUSION

For the foregoing reasons, the Defendants' Partial Motion to Dismiss (D. 29) is ALLOWED with respect to Count II but DENIED with respect to Counts III and IV.  Count II is hereby DISMISSED.


**So Ordered.**                          /s/ Donald L. Cabell
                                         DONALD L. CABELL, U.S.M.J.

DATED:  October 21, 2020